12

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

APR 0 1 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| **RAFAEL MARTINEZ,** | § | |
| **Plaintiff,** | § | |
| **V.** | § | |
| | § | |
| | § | **CIVIL ACTION NO. 01-CV-155** |
| **STATE OF TEXAS,** | § | |
| **DAVID FORREST, and** | § | |
| **WACKENHUT CORRECTIONS** | § | |
| **CORPORATION** | § | |

**PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT**

TO THE HONORABLE COURT:

A. PARTIES

1. Plaintiff, RAFAEL MARTINEZ, (hereinafter sometimes referred to as "Plaintiff" or "MARTINEZ") is an individual residing in Cameron County, Texas.

2. Defendant, WACKENHUT CORRECTIONS CORPORATION, (hereinafter sometimes referred to as "WACKENHUT") is a Florida corporation which has appeared and answered by and through their attorney of record Linda M. Kearney.

3. Defendant, DAVID FORREST (hereinafter sometimes referred to as "FORREST"), is an individual who has appeared and answered by and through his attorney of record.

4. Defendant, JORGE AVILA (hereinafter sometimes referred to as "AVILA"), is an individual who can be served at his place of employment at the Wackenhut Corrections Facility of Raymondville, Willacy County, Texas.

5. Defendant the STATE OF TEXAS, TEXAS DEPARTMENT OF CORRECTIONS (hereinafter sometimes referred to as "TEXAS"), who has appeared and answered by

and through its attorney of record Carlos Lopez.

6. Defendant, OFFICER GALVAN (hereinafter sometimes referred to as "GALVAN"), is an individual who can be served at his place of employment at the Wackenhut Corrections Facility of Raymondville, Willacy County, Texas.

7. Defendant, JOHN DOE, (who's name is unknown at this time) (hereinafter sometimes referred to as "DOE"), is an individual employed at Wackenhut Corrections Willacy County Facility and who upon information and belief was the driver of the vehicle which transported Plaintiff to the hospital on the night in question. JOHN DOE can be served at his place of employment at the Wackenhut Corrections Facility of Raymondville, Willacy County, Texas.

8. Defendants STATE OF TEXAS, DAVID FORREST, JAMES PANKEY, JOHN DOE, OFFICER GALVAN, JORGE AVILA and WACKENHUT CORRECTIONS CORPORATION are hereinafter also sometimes collectively referred to as "DEFENDANTS".

## B. JURISDICTION

9. The court has jurisdiction over the lawsuit according to 28 U.S.C. §§ 1331 and 28 U.S.C. §§ 1343(3), because Plaintiff alleges Defendants, FORREST and WACKENHUT are liable pursuant to 42 U.S.C. § 1983 for violating his constitutional rights.

10. A federal district has original jurisdiction over claims brought pursuant to 42 U.S.C.§ 1983 by virtue of 28 U.S.C. § 1343(3). *See also Lynch v. Household Finance Corp.*, 405 U.S. 538, 543 n. 7 92 S.Ct. 113, 31 L. Ed. 2d 424, (1972).

11. At all times material, all of the agents, servants, and employees of the Defendant, WACKENHUT, who were in any way connected with the occurrence, were acting under color of law and within the course and scope of their employment or official duties and in furtherance of the duties of their office or employment.

12. At all times material, FORREST, PANKEY, GALVAN DOE and AVILA were acting under color of law and within the course and scope of their employment or official duties and in furtherance of the duties of their office or employment.

13. Prior to the filing of this lawsuit, within six months from the date of the occurrence described in this petition, Plaintiff presented notice of his claim to WACKENHUT and all prerequisites required by law have been met prior to filing suit. In the alternative, the WACKENHUT, FORREST, PANKEY, GALVAN, DOE and AVILA (hereinafter sometimes collectively referred to as "Defendants") have had actual notice of MARTINEZ's claim. A true copy of the notice is attached hereto as Exhibit A and incorporated herein by reference.

14. WACKENHUT and FORREST may be held to answer in a court of law through the occurrence described herein.

## C. FACTS

15. Plaintiff realleges the allegations contained in paragraphs 1 through 14.

    A. MARTINEZ was being detained at the WACKENHUT CORRECTIONS CORPORATION, Willacy County Unit, Texas Department of Criminal Justice in Raymondville, Texas, serving a two year prison sentence. MARTINEZ suffered personal injuries when he was working with the repair crew that was

called in to perform a plumbing repair in a containment area "Treatment 4" of the Facility that had been converted to a "lock down" room on March 27, 2000.

B. The inmates within this "lock down" room were at the point of riot because of a lack of hot water. The same inmates were part of a gang known as the "pistoleros," which is primarily a Hispanic gang. WACKENHUT, FORREST and PANKEY had actual knowledge of the situation, which is why the WACKENHUT, FORREST had separated these particular inmates into this "lock down" area and why all other Hispanic inmates were moved out of "treatment 4", where this "lock down" was located. Additionally, all corrections officers were aware that a "gang war" among alleged gangs in the prison was in progress, which is another reason why these particular prisoners were on "lock down" status.

C. Prior to his entering "Treatment 4" where the repair was to be performed, Plaintiff pleaded with AVILA and FORREST, not to force him to go into this area because he was afraid of the violent prisoners contained in this makeshift "lock down." Additionally, upon entering the building, AVILA, MARTINEZ, and TOM ENGLE (another inmate and member of the maintenance crew) were met by FORREST, who was exiting the building. MARTINEZ again asked to stay behind, but FORREST refused Plaintiff's request and insisted that he enter the building to assist in performing the repair. As a result of the AVILA'S and FORREST'S insistence that MARTINEZ accompany the crew to Treatment 4,

MARTINEZ was brutally attacked, assaulted and knocked to the floor by at least five violent offenders.

D. AVILA failed to secure the lock on the tool box filled with plumbing tools, which had been taken into the building. MARTINEZ was beaten with the lock from the unsecured toolbox, as well as a laundry bag filled with hair grease cans, and other items which can be purchased by prisoners within the prison. MARTINEZ was punched and kicked repeatedly by the offenders as he lay in a fetal position trying to protect himself from their blows. Additionally, MARTINEZ was hit with a chair from the treatment four common area. Correctional Officers (including but not limited to) PANKEY, and the Maintenance Technician, AVILA, both employed by WACKENHUT and the Maintenance crew (consisting of two or more inmates), fled the immediate area, locking themselves behind the safety of a steal door within the "Picket" area of the Treatment building. The correctional Officers ordered the other inmate to go to the other side of the room. These actions left MARTINEZ alone and defenseless with his attackers, as PANKEY, a correctional officer employed by WACKENHUT, viewed the attack from inside the "picket". The only intervention that was attempted by PANKEY or any other Correctional Officers which may have been present, was yelling at MARTINEZ's attackers from behind the locked door of the "picket".

E. Eventually, a "Code Black" was called to summon the DEFENDANTS' riot team. However, the riot team was called to "Housing 4" instead of "Treatment 4",

resulting in the significant delay of the arrival of the riot team to the location of the incident. The riot team responded to "Housing 4" which is located on the West side of the compound, instead of "Treatment 4" which is located on the far East side of the compound. Meanwhile, no intervention was attempted by PANKEY or other Correctional officers even after the riot team failed to timely arrive. More than five minutes passed before riot officers arrived on the scene. In fact, it was not until the attackers disbursed voluntarily, upon the arrival of the Riot Team did any correctional officer attempt to enter the room to assist MARTINEZ to his feet.

F.  As a result of the DEFENDANTS' intentional and knowing conduct and conscience indifference Plaintiff suffered severe physical injuries that warranted immediate transport by Raymondville Emergency Medical Services to Valley Baptist Medical Center. Although Plaintiff's injuries were severe, DEFENDANTS refused to call emergency services for transport to the hospital. Instead, Plaintiff was transported to the hospital approximately thirty minutes after the attack by DEFENDANTS' transport van, accompanied by two Correctional Officers, DOE and GALVAN, employed by DEFENDANTS. DOE and GALVAN transported Plaintiff to the hospital with full knowledge of the seriousness of Plaintiff's injuries, stopped at a convenience store in Raymondville, Texas, on route to Valley Baptist Medical Center, to purchase drinks and snacks. Additionally, GALVAN, made a telephone call to the Wackenhut facility from the convenience store regarding some personal

medication he had forgotten and even discussed the possibility of returning to the facility to retrieve his medication prior to the completion of the transport of Plaintiff to the hospital. Plaintiff was forced to wait at least an additional ten minutes (still bleeding from his injuries and with severe trauma to the heat), in the transport van while GALVAN went into the convenience store.

G. As a result of DEFENDANTS' negligence, knowing conduct, lack of supervision of the prisoners, lack of proper training and/or supervision of Correctional officers employed by DEFENDANTS, and/or negligent implementation of policy, Plaintiff suffered from injuries including, but not limited to, multiple contusions to the left arm, right shoulder, posterior thorax, and lacerations to his scalp totaling 14.5 cm, nose (4cm), and left upper eyelid (4 cm) for which staples and sutures were necessary. Plaintiff also suffered severe bruising around the kidney area. As a result of these injuries MARTINEZ has been subjected to months of pain, bruising, and continues to suffer from severe headaches due to the violent blows to the head that her received. In addition, MARTINEZ will have permanent scarring on his scalp, face, nose and eyelid, and will experience some degree of permanent pain for the rest of his life.

H. As a result of the lack of supervision of the other prisoners, and/or lack of proper training, and/or supervision of the Correctional Officers employed by DEFENDANTS, and/or negligent implementation of policy, neither the AVILA nor PANKEY or any other Correctional Officers employed by DEFENDANTS who were on duty at the time of the incident secured the lock on the tool box,

which was one of the instruments used to beat MARTINEZ. Additionally, the door to the "lock down" area was not secured during the pendency of the repair which resulted in the escape of the offenders contained there which resulted in the attack of and bodily injury to MARTINEZ.

16. FORREST, is liable to MARTINEZ in that, after repeated requests not to enter the building, MARTINEZ was ordered by FORREST to enter "treatment 4" when FORREST had personal knowledge of the eminent danger.

17. AVILA, is liable to MARTINEZ in that, after repeated requests not to enter the building, MARTINEZ was ordered by AVILA to enter "treatment 4" for the purpose of assisting with repairs. Additionally, AVILA, without regard to the safety of his crew and in direct violation of policy, left the toolbox unsecured resulting in the lock being used as a weapon against MARTINEZ.

18. PANKEY is liable to MARTINEZ in that he failed to properly intervene in accordance with policy or attempt to assist MARTINEZ in any way as he was being violently beaten by the other inmates and "fled the scene" of the assault.

19. DOE and GALVAN are liable to MARTINEZ in that they acted with conscience indifference to Plaintiff's health by stopping at a convenience store while transporting Plaintiff to the hospital and by failing to timely deliver Plaintiff to the hospital in violation of his constitutional rights.

20. WACKENHUT is liable to MARTINEZ in that:

a. As a result of the lack of supervision of the other prisoners, and/or lack of proper training, and/or supervision of the Correctional Officers, and/or negligent implementation of

policy, MARTINEZ received multiple contusions to the left arm, right shoulder, posterior thorax, and lacerations to his scalp totaling 14.5 cm, nose (4cm), and left upper eyelid (4 cm) for which staples and sutures were necessary.

21. TEXAS is liable to Plaintiff in that:

As a result of the negligent contracting of WACKENHUT, failure to monitor the state jail facility to insure proper procedures were implemented, failure to insure WACKENHUT was properly training their employees, failure to insure WACKENHUT was properly supervising Correctional Officers under their employ, failure to provide adequate and proper "lock down" facilities, and/or the negligent implementation of state policy, Plaintiff received multiple injuries for which he will suffer the effects for the rest of his life.

22. DEFENDANTS are liable to the Plaintiff in that:

a. Defendants failed to secure violent prisoners in a properly secured location.

b. Defendants failed to implement proper security procedures when conducting the repairs, by failing to secure the door of the "lock down" area.

c. Defendants failed to implement proper security procedures when conducting the repairs, by failing to secure the lock on the toolbox.

23. MARTINEZ re-alleges the allegations contained in paragraphs 1 through 22.

In the alternative, DEFENDANTS are further liable to the Plaintiff under 42 U.S.C. § 1983 in that they subjected Plaintiff to cruel and unusual punishment which violated Plaintiff's 8th Amendment rights.

a. DEFENDANTS acted recklessly and indifferently by failing to protect Plaintiff from the other inmates when they had actual awareness that the inmates were

of a violent nature, at the point of riot, that Plaintiff had plead with them that these inmates would attack, and that they would attack Plaintiff in the manner described above if given any chance.

b. DEFENDANTS created dangerous conditions by using an area of "treatment 4" as a containment cell for extremely violent inmates, when the area used was not designed for this purpose. Such decision created an extremely dangerous condition for anyone entering said area, and constitutes cruel and unusual punishment as applied to Plaintiff.

c. DEFENDANTS acted recklessly and indifferently by failing to immediately transport Plaintiff to the hospital in a timely fashion

24. In the alternative, Defendants are further liable to the MARTINEZ under 42 U.S.C. § 1983 in that they violated Plaintiff's 14th Amendment due process rights and 6th Amendment rights, by interfering with the effective assistance of counsel.

a. When Plaintiff's attorney, Jason R. Mann, attempted to meet with Plaintiff for the first time on March 30, 2000, after submitting all proper applications, he was searched, interrogated by FORREST as to the specific reason that he was meeting with his client, and only allowed to take one photograph of Plaintiff's injuries. This was done even though Mr. Mann had formally requested, in advance, a visitation of Plaintiff with a Camera. In fact, Mr. Mann's assistant spoke with Mrs. Lilly at the facility, prior to Mr. Mann's visit, to inquire as to proper protocol and whether a camera would be permitted into the visitation room to take pictures of Plaintiff's injuries. Mrs. Lilly told Mr. Mann's assistant

      that this was allowed.  This was done by DEFENDANTS to limit Plaintiff's access to counsel and to destroy potential evidence of the assault described herein.

  b.    Despite this first meeting, Mr. Mann arranged, through the proper methods, a second meeting with Plaintiff April 13, 2000.  Upon the second meeting with Plaintiff, Jason R. Mann was escorted by a guard to a location where more than fifty *unrestrained and unattended* inmates were being processed into the prison.  The guard then left Mr. Mann unattended with the Guards and locked the door to this area.  This was done by DEFENDANTS intentionally with the purpose of attempting to intimidate the attorney not to return to the facility, and with the purpose of attempting to prevent Plaintiff from obtaining effective assistance of counsel for the above-referenced assault.

25.    MARTINEZ re-alleges the allegations contained in paragraphs 1 through 16.

    The occurrence described in this petition is a direct and proximate result of the negligence of Defendants in the following particulars:

  a.    In that, when viewed objectively, at the time in question, the conduct of Defendants involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and in that WACKENHUT and FORREST had actual, subjective awareness of the risk involved, but, nevertheless, proceeded with conscious indifference to the rights, safety, or welfare of others.

  b.    In the negligent application of disciplinary rules of employees.

c. In the negligent implementation of prisoners discipline policy.

d. In the negligent and improper use of security devises and/or cells or rooms.

e. In negligently and improperly implementing and maintaining proper security procedure.

f. In negligently not implementing immediate and effective response procedures in an emergency situation.

g. In negligently failing to render aid.

h. In the negligent dereliction of duty of the warden and correctional officers.

26. MARTINEZ has been damaged in all these respects in an amount within the jurisdictional limits of the court.

27. MARTINEZ has incurred and requests reasonable attorney's fees, expenses and costs pursuant to 42 U.S.C. § 1988.

PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, RAFAEL MARTINEZ requests that Defendants, DAVID FORREST, JORGE AVILA, JOHN DOE, OFFICER GALVAN WACKENHUT CORRECTIONS CORPORATION and THE STATE OF TEXAS be cited to appear and answer, and that on final trial Plaintiff have:

a. Judgment against Defendants for the actual and special damages suffered by Plaintiff as a result of Defendants' conduct, in an amount within jurisdictional limits of the court.

b. Costs of suit.

c. Prejudgment and post-judgment interest as provided by law.

d. Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

*J. EDWARD MANN, JR. & ASSOCIATES*

Jason R. Mann
State Bar No. 24004793
Federal Bar No. 23543
222 E. Van Buren, Suite 701
P. O. Box 231
Harlingen, Texas 78551-0231
Telephone: 956/428-4114
Facsimile: 956/428-9494
Attorney for RAFAEL MARTINEZ

CERTIFICATE OF SERVICE

I certify that I sent a copy of PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT to each party's attorney listed below by Certified Mail Return Receipt Requested.

Linda M. Kearney
Porter, Rogers, Dahlman & Gordon
One Shoreline Plaza
800 N. Shoreline, Suite 800
Corpus Christi, TX 78401

Carlos D. Lopez
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, TX 78711

Jason R. Mann

J. EDWARD MANN, JR. & ASSOCIATES
ATTORNEYS AT LAW
Bank of America Tower
222 EAST VAN BUREN, SUITE 701
HARLINGEN, TEXAS 78550

J. EDWARD MANN, JR.*

JASON R. MANN

*BOARD CERTIFIED
TAX LAW
ESTATE PLANNING AND PROBATE LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

P. O. Box 231
HARLINGEN, TEXAS 78551-0231
TELEPHONE (956)428-4114
FAX (956)428-9494

August 3, 2000

**NOTICE OF CLAIM**

**TEXAS TORT CLAIMS ACT**

Texas Department of Criminal Justice
Wayne Scott, Executive Director
P.O. Box 99
Huntsville, TX 77342-0099

CMRRR # Z 446 024 378

Wackenhut Corrections Corporation
4200 Wackenhut Dr. Ste 100
Palm Beach Gardens, FL 33410

CMRRR # Z 446 024 379

The Prentice-Hall Corp. System Inc.
800 Brazos
Austin, TX 78701

CMRRR # Z 446 024 380

**Re: Injury on March 27, 2000 to Rafael Martinez**

This letter is intended to put you on notice that pursuant to Tex.Civ.Prac. & Rem. Code Ann. § 101.101 (Vernon 1986), Rafael Martinez was injured due to the conduct of agents and employees of the State of Texas and the Wackenhut Corrections Corporation, Willacy County State Jail Facility, on March 27, 2000.

The injury took place at the Willacy County State Jail Facility on March 27, 2000 at approximately 2:00 p.m. The incident occurred due to the conduct of correctional officer Panky, two other correctional officers who's identities are unknown at this time, Warden David Forrest, Mr. Jorge Avila, the maintenance technician, and Armondo Dominguez, the maintenance supervisor. Specifically, Mr. Martinez was working with the repair crew that was called in to perform a plumbing repair, in a "lock down" room within Treatment 4. The room which contained the offenders was not designed for "lock down" purposes. The offenders in who were in the area on "lock down", were at the point of riot due to a lack of hot water. Additionally, these offenders were allegedly members of a gang known as the "pisterleros", who are considered extremely dangerous. These offenders mistook Mr. Martinez for a rival gang member. They were not aware that he was not a member of a any gang. All correctional officers at the prison were aware that this alleged gang was at war with other alleged gangs in the prison, which is why they were on

EXHIBIT
A

"lockdown". Knowing all of this, the above individuals forced Mr. Martinez to enter this area, despite his objections, while the repair crew attempted to fix the plumbing problem.

The above individuals failed to secure the tool box in compliance with Wackenhut's own policies. As a result of these aforementioned actions and correctional officers inattention to their duty, offenders contained in the "lock down" area escaped into the main area where Mr. Martinez was located. Rafael Martinez was attacked, assaulted and knocked to the floor by at least five violent offenders, beaten with the lock from the unsecured toolbox, as well as a laundry bag filled with hair grease cans and other items. Mr. Martinez was punched, kicked and hit with a chair as he lay in a fetal position on the floor of the "day room" of the treatment.

The correctional officers, instead of trying to intervene, fled the immediate area leaving Mr. Martinez in the area alone with his attackers and defenseless. The Conduct of the above-referenced individuals was egregious and therefore warrants punitive damages.

Finally, a distress call "Code Black" was made to summon riot officers, but they were summoned to the wrong area. Riot officers were summoned to Housing 4 instead of Treatment 4. Housing 4 is located on the opposite side of the compound from Treatment 4. All the while, the above individuals watched Mr. Martinez endure a beating for at least 5 minutes or more, doing nothing more than yelling at the offenders from a safe distance.

As a result of this incident, Mr. Martinez has suffered severe physical injuries that warranted immediately being transported by Raymondville Emergency Medical Services to Valley Baptist Medical Center. Specific injuries included multiple contusions to the left arm, right shoulder, posterior thorax, and lacerations to his scalp (totaling 14.5 cm), nose (4 cm), and left upper eyelid (4cm) for which staples and sutures were necessary. As a result of these injuries, Mr. Martinez has been subjected to months of pain, bruising, and continues to suffer from severe headaches due to the violent blows that he received. In addition, Mr. Martinez will have permanent scarring due to the lacerations in his scalp, face, nose and eyelid, and will experience some degree of permanent pain for the rest of this life. Mr. Martinez has experienced mental anguish from the events of that day which are replayed vividly in his mind causing loss of sleep and anxiety.

Rafael Martinez will claim damages in excess of $2,000,000.00 for injuries resulting from the conduct of employees and agents of the State of Texas and the Wackenhut Corrections Corporation, Willacy County State Jail Facility.

Sincerely,

Jason R. Mann

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

The Prentice-Hall Corp. System Inc.
800 Brazos
Austin, TX 78701

A. Received by (Please Print Clearly) | B. Date of Delivery

C. Signature X ☐ Agent ☐ Addressee

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

AUG 09

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Copy from service label) Z 446 024 380

PS Form 3811, July 1999 Domestic Return Receipt 102595-99-M-1789

---

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Texas Department of Cri...
Wayne Scott, Executive Director
P.O. Box 99
Huntsville, TX 77342-0099

A. Received by (Please Print Clearly) | B. Date of Delivery

C. Signature ☐ Agent ☐ Addressee

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Copy from service label) Z 446 024 378

PS Form 3811, July 1999 Domestic Return Receipt 102595-99-M-17

---

Z 446 024 380

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail (See reverse)

| | |
|---|---|
| Sent to: Prentice Hall Corp | |
| Street & Number | |
| Post Office, State, & ZIP Code | |
| Postage | $ |
| Certified Fee | |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date, & Addressee's Address | |
| TOTAL Postage & Fees | $ |
| Postmark or Date | |

PS Form 3800, April 1995

---

Z 446 024 377

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail (See reverse)

| | |
|---|---|
| Sent to: Wackenhut | |
| Street & Number | |
| Post Office, State, & ZIP Code: Palm Beach FL | |
| Postage | $ |
| Certified Fee | |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date, & Addressee's Address | |
| TOTAL Postage & Fees | $ |
| Postmark or Date | |

PS Form 3800, April 1995

---

Z 446 024 378

US Postal Service Notice
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail (See reverse)

| | |
|---|---|
| Sent to: TDCJ | |
| Street & Number | |
| Post Office, State, & ZIP Code | |
| Postage | $ |
| Certified Fee | |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date, & Addressee's Address | |
| TOTAL Postage & Fees | $ |
| Postmark or Date | |

PS Form 3800, April 1995

---

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Wackenhut Corrections Corporation
4200 Wackenhut Dr. Ste 100
Palm Beach Gardens, FL 33410

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly) Ziminski | B. Date of Delivery 8-8-01

C. Signature ☐ Agent ☐ Addressee

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Copy from service label) Z 446 024 379

PS Form 3811, July 1999 Domestic Return Receipt 102595-99-M-1

08/31/2001 FRI 08:57 [TX/RX NO 8648] 021